

**SO ORDERED.**

**SIGNED this 07 day of July, 2011.**

*Stephani W. Humrickhouse*
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## FAYETTEVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| M&M INDEPENDENT FARMS, INC., | 09-03514-8-SWH |
| DEBTOR | |
| | |
| M&M INDEPENDENT FARMS, INC., | ADVERSARY PROCEEDING NO. |
| Plaintiff, | 10-00277-8-SWH-AP |
| v. | |
| RURAL COMMUNITY INSURANCE AGENCY, INC., d/b/a RURAL COMMUNITY INSURANCE SERVICES, | |
| Defendants. | |

### ORDER DENYING MOTION TO DISMISS OR COMPEL ARBITRATION

The matter before the court in this adversary proceeding is the motion of the defendant, Rural Community Insurance Agency d/b/a Rural Community Insurance Services (RCIS"), to dismiss this proceeding or, in the alternative, to compel arbitration and stay this proceeding. The motion was heard in Raleigh, North Carolina, on March 30, 2011. The motion will be denied.

The chapter 12 debtor, M&M Independent Farms, Inc. ("M&M"), is a family-owned farming operation growing tobacco, soybeans, and other crops in eastern North Carolina. In 2008, RCIS issued a crop insurance policy to M&M covering its tobacco crop in Sampson and Cumberland counties. Later that year, M&M submitted a claim under the policy for the loss of a portion of its 2008 tobacco crop in Cumberland County due to adverse weather conditions. By M&M's calculations, it should have been indemnified by RCIS in the amount of at least $49,027.20.

M&M alleges that it "made its claim at the conclusion of the 2008 crop year. The Defendant appraised the Plaintiff's loss on October 7, 2008, and the Plaintiff submitted a written production and yield report work sheet signed April 6, 2009." Complaint ¶ 22(e). On April 30, 2009, M&M filed a petition for relief under chapter 12 of the Bankruptcy Code. A chapter 12 plan was confirmed on September 18, 2009.

On May 27, 2010, RCIS denied coverage for M&M's loss. M&M contends that RCIS ignored it for over a year and finally responded to M&M's claim "only after having been contacted by Plaintiff's counsel on April 29, 2010." Complaint ¶ 22(e). M&M initiated this adversary proceeding on October 26, 2010, alleging, among other things, that RCIS's refusal to pay M&M for its claimed loss constituted a breach of contract. M&M also sets out North Carolina state law claims for unfair and deceptive claims handling practices and, separately, unfair and deceptive trade practices.

In its answer, by way of affirmative defense, RCIS asserted that the dispute should be arbitrated pursuant to the policy's arbitration clause. On January 20, 2011, RCIS filed the instant motion requesting that the adversary proceeding be dismissed or, in the alternative, that the court compel M&M to arbitrate its claim and stay this proceeding pending resolution of the arbitration.

According to RCIS, M&M's disagreement with RCIS's refusal to indemnify M&M is within the scope of an arbitration provision contained in the insurance policy and, as such, must be arbitrated. RCIS explains that the policy at issue is a federal crop insurance policy, which typically consists of three separate documents which "form a pyramid of coverage terms, criteria and exclusions." RCIS Mem. in Support of Mot. to Dismiss at p. 8. The "Basic Provisions" document, which contains the dispute resolution language at issue, and the Tobacco Crop Provisions document, which constitutes a "second tier" that serves to narrow the provisions on a crop by crop basis, are codified within the Code of Federal Regulations. 7 C.F.R. §§ 457.8, 457.136. The third tier sets out Special Provisions of Insurance, which focuses on both the particular crop and the county in which it is grown. RCIS Mem. at p. 8. RCIS represents that the Basic Provisions at issue in this matter provide as follows:

> 20.  Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review.
>
>   (a) If you and we fail to agree on any determination made by us except those specified in 20(d), the disagreement may be resolved through mediation in accordance with section 20(g). If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA) except as provided [in certain sections] . . . .
>
>   (b) Regardless of whether mediation is elected:
>
>        (1) The initiation of arbitration proceedings must occur within one year of the date we denied your claim or rendered the determination with which you disagree, whichever is later;
>
>        (2) If you fail to initiate arbitration in accordance with section 20(b)(1) and complete the process, you will not be able to resolve the dispute through judicial review;

(3) If arbitration has been initiated in accordance with section 20(b)(1) and completed, and judicial review is sought, suit must be filed not later than one year after the date the arbitration decision was rendered; and

(4) In any suit, if the dispute in any way involves a policy or procedure interpretation, . . . an interpretation must be obtained from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC. Such interpretation will be binding.

(c) Any decision rendered in arbitration is binding on you and us unless judicial review is sought in accordance with section 20(b)(3). Notwithstanding any provision in the rules of the AAA, you and we have the right to judicial review of any decision rendered in arbitration.

RCIS Mem. at pp. 8-9.

M&M responds that this court has jurisdiction over the matters asserted in the adversary proceeding and the authority to enjoin enforcement of the arbitration provision. In this case, M&M argues, RCIS's post-petition denial of coverage constitutes a post-petition breach of contract and is a "core" issue that this court has the authority to hear. Further, M&M asserts that under the facts and circumstances of this chapter 12 case, arbitration would run counter to the fundamental goals of the bankruptcy laws.

## DISCUSSION

Arbitration provisions "generally are favored in federal courts. In bankruptcy proceedings, however, whether a proceeding is a 'core proceeding' as defined by 28 U.S.C. § 157(b) generally determines whether an arbitration clause can be enforced." D&B Swine Farms, Inc. v. Murphy-Brown, LLC, 430 B.R. 737, 741 (Bankr. E.D.N.C. 2010), citing White Mountain Mining Co., LLC v. Congleton, LLC, 403 F.3d 164, 169 (4th Cir. 2005) and Blanchard Transportation, 2008 WL 619379 at *1 (Bankr. E.D.N.C. 2008). More particularly, in the Fourth Circuit, controlling precedent establishes that "[a]rbitration is inconsistent with centralized decision-making because

permitting an arbitrator to decide a core issue would make debtor-creditor rights 'contingent upon an arbitrator's ruling' rather than the ruling of the bankruptcy judge assigned to hear the debtor's case." White Mountain, 403 F.3d at 169 (internal citation omitted), quoted in D&B Swine Farms, 430 B.R. at 741. In the bankruptcy context, then, "the burden is on the party opposing arbitration to show that Congress intended to 'limit or prohibit waiver of a judicial forum for a particular claim' under the Federal Arbitration Act." D&B Swine Farms, 430 B.R. at 741, construing Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987), as quoted in Blanchard Transportation, 2008 WL 619379 at *1.

In a recent decision from this district, D&B Swine Farms, the court considered a question very similar to an issue presented in this matter, and concluded that "the question of whether a post-petition breach of a pre-petition contract constitutes a 'core' matter is unsettled." D&B Swine Farms, 430 B.R. at 743. In that case, which began under chapter 12 but was converted to a case under chapter 11, the court ultimately concluded that the alleged post-petition breaches of the parties' three pre-petition contracts, two of which included arbitration provisions, were "core matters within the jurisdiction of the court." Id. The D&B Swine Farms court agreed with a Second Circuit decision that was oft-cited in White Mountain, and concluded that

> the relevant inquiry is "the impact these contracts have on other core bankruptcy functions." Assessment of that impact can, when assessing whether arbitration interferes with bankruptcy courts' jurisdiction and ability to fulfill the underlying purposes of bankruptcy law, become an extremely circular exercise because post-petition breaches of contracts made pre-petition frequently do impact core bankruptcy functions to the extent that the contract claims are core.

Id., quoting United States Lines, Inc., 197 F.3d 631, 637 (2nd Cir. 1999). There is, unfortunately, no "bright-line" rule, thought this court agrees with other courts that it would be extremely useful to have one. Id.

A bankruptcy court can hear all core matters as defined by 28 U.S.C. § 157(b)(2), and M&M contends that at issue in this proceeding are matters concerning the administration of the estate and other proceeding affecting the liquidation of the assets of the estate. 28 U.S.C. § 157(b)(2)(A) and (O); see White Mountain, 403 F.3d at 168-170; D&B Swine Farms, 430 B.R. at 741. The dispute is a core proceeding, M&M states, "based on (1) its impact on the administration of the estate; (2) its [e]ffect on the liquidation of assets by either recovering funds for distribution to creditors or expending funds that could otherwise be dedicated to operations or distributions to creditors; and (3) the conflict between arbitration and the purposes of Chapter 12." M&M Mem. at p. 5. The court agrees. This court also has the authority, pursuant to 11 U.S.C. § 105, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.

In its brief, RCIS outlines the many important goals embodied in the Federal Crop Insurance Act ("FCIA"), and points out that the FCIA's policy directives promote "a uniform and accessible system of farm protection." See, e.g., In re 2000 Sugar Beet Crop Ins. Litigation, 228 F. Supp. 2d 992 (D. Minn. 2002). RCIS also offered a detailed explanation of the history behind the FCIA directives, including the FCIA goal of ensuring that "all claims for losses are adjusted . . . in a uniform and timely manner," 7 U.S.C. § 1508(j)(l). RCIS emphasized that the FCIA preempts state law *to the extent that* state law itself purports to preempt the FCIA, or is inconsistent with the contracts, agreements or regulations within the FCIA's ambit. 7 U.S.C. § 1506(l). The court

6

respects these objectives.  It is important to note, however, that they neither conflict with nor control this court's determination of whether there exists, in this proceeding, a core matter over which this court should appropriately exercise its jurisdiction.

Through the Bankruptcy Code, "Congress intended to centralize disputes about a debtor's assets and legal obligations in the bankruptcy courts." White Mountain, 403 F.3d at 169; citing Grady v. A.H. Robins Co., 839 F.2d 198, 201-02 (4th Cir. 1988).  The unique purpose of chapter 12 of the Bankruptcy Code is "to give family farmers facing bankruptcy a fighting chance to reorganize their debts and to keep their land."  In re Massengill, 73 B.R. 1008, 1012 (Bankr. E.D.N.C. 1987) (quoting H.R. Rep. No. 99-958, 99th Cong., 2d Sess. 48 (1986), reprinted in 1986 U.S. Code. Cong. & Admin. News pp. 5227, 5249), rev'd in part on other grounds, 100 B.R. 276 (E.D.N.C. 1988).  Chapter 12 was specifically designed primarily to "provide family farmers with a faster, simpler, and cheaper alternative to Chapter 11 and Chapter 13 procedures, while preserving the fair treatment of creditors under those chapters."  Knudsen v. IRS, 581 F.3d 696, 716 (8th Cir. 2009), quoting Rowley v. Yarnall, 22 F.3d 190, 193 (8th Cir. 1994).  Accordingly, this court takes to heart the White Mountain court's emphasis on how "[c]entralization of disputes concerning a debtor's legal obligations is *especially critical* in chapter 11 cases, . . . [where] [t]he 'fundamental purpose' of chapter 11 is the rehabilitation of the debtor."  White Mountain, 403 F.3d at 170; quoting NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528 (1983) (emphasis added).  These critical concerns in a chapter 11 case are every bit as applicable in a chapter 12 case.  They are, perhaps, even more so in light of the increased emphasis in chapter 12 on speed, simplicity, economy and the continuing nature of funding obligations.

In this case, it is apparent that the debtor's claim is a post-petition claim arising out of RCIS's denial, more than a year after the bankruptcy petition was filed, of M&M's effort to recover indemnity for a lost crop.   After full review, the court concludes that the breach of contract claim, as well as the related claims based on unfair and deceptive practices, are core matters arising in a case under title 11 and are within the court's jurisdiction.  The court does not conclude that the matter is "core" based only on the fact that the alleged breach of contract occurred post-petition. Of great significance to the court is its certainty that an arbitration would take far more time to complete than would an adversary proceeding in this court,[1] thus impeding this court's efficient administration of the estate and potentially disrupting the successful completion of the chapter 12 plan.  This is entirely inconsistent with the underlying purpose of the bankruptcy laws.  Diverting the attention of the debtor's management (the debtor is family-owned and operated) to an entirely separate proceeding likewise is inapposite to the goal of centralization.  White Mountain, 403 F.3d at 169.

The arbitration provision in the parties' insurance contract will not be enforced.   It also is significant in this case, as it was in D&B Swine Farms, that any monies M&M ultimately might recover would be assets of the estate (which, because the debtor is in chapter 12,  remains under the supervision of the trustee for the duration of the plan).  The arbitration process would impose additional, unnecessary litigation costs on the estate and, again as in D&B Swine Farms, the amounts M&M "seeks to recover for post-petition breaches were not available before the petition was filed, and as such are an integral part of this proceeding."  D&B Swine Farms, 430 B.R. at 743-

---

[1] The crop insurance agreement allows either party to seek judicial review of the determination reached in arbitration, and provides up to one year after issuance of the determination in which to do so.  Thus, even after incurring the costs (in time and dollars) of arbitration, the parties could find themselves at exactly the same point at which they are today.

44.  The court concludes that "[o]rdering arbitration and staying the adversary proceeding would substantially interfere with [the debtor's] efforts to reorganize, which evidences an inherent conflict between arbitration and the underlying purpose of the bankruptcy laws." <u>Id.</u> at 744.

For the foregoing reasons, RCIS's motion to dismiss or in the alternative to compel arbitration and stay this adversary proceeding is **DENIED**.

**SO ORDERED.**

**END OF DOCUMENT**