**SO ORDERED.**

**SIGNED this 15 day of August, 2012.**



_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

**M&M INDEPENDENT FARMS, INC.**

    **DEBTOR**

CASE NO.

09-03514-8-SWH

**M&M INDEPENDENT FARMS, INC.**

    **Plaintiff**

    v.

**RURAL COMMUNITY INSURANCE AGENCY, INC. D/B/A RURAL COMMUNITY INSURANCE SERVICES**

    **Defendant.**

ADVERSARY PROCEEDING NO.

10-00277-8-SWH-AP

### MEMORANDUM OPINION

The trial of this adversary proceeding initiated by the debtor, M&M Independent Farms, Inc., against Rural Community Insurance Agency, Inc. d/b/a Rural Community Insurance Services

("RCIS"), was held in Raleigh, North Carolina, on May 1 and 2, 2012. At the close of the debtor's evidence, RCIS moved for a directed verdict, which was taken under advisement, and RCIS proceeded with its evidence. For the reasons that follow, judgment will be entered in favor of RCIS.[1]

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(O), which this court may hear and determine.

## BACKGROUND

Debtor filed its chapter 12 petition on April 30, 2009. On September 18, 2009, the court confirmed the debtor's chapter 12 plan. Debtor initiated this adversary proceeding against RCIS on October 26, 2010, alleging three causes of action: 1) breach of contract of Common Crop Insurance Policy, No. NC-090-530796 (hereinafter, the "Policy"), for failing to indemnify the debtor $47,027.20 for its lost tobacco crops in Cumberland County, North Carolina; 2) unfair or deceptive claims handling practices pursuant to N.C. Gen. Stat. § 58-63-15, and 3) unfair or deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1. RCIS responded on December 21, 2010, denying that the loss to the debtor's tobacco crops was covered under the Policy, and asserting that any loss incurred by the debtor was the result of the debtor's failure to exercise reasonable care and diligence

---

[1] Because the court finds that judgment should be awarded to RCIS, it will forgo a directed verdict analysis.

in mitigating its damages. Additionally, RCIS asserted the arbitration clause contained in the insurance policy as a bar to litigation in the bankruptcy court.[2]

Debtor, a tobacco farming company, owned and cultivated multiple tracts of farmland in both Sampson and Cumberland Counties. As is required under the Policy,[3] the debtor purchased two crop insurance policies to cover its 2008 crop harvest - one policy for Sampson County and another for Cumberland County. In 2008, the debtor's tracts in Sampson County received a large amount of rainfall, resulting in an acceleration of the ripening process. Plants which normally gradually ripened from bottom to top throughout the season ripened quickly and all at once making a manageable harvest difficult, if not impossible. During that same time, the debtor contends, and RCIS disputes, that debtor's Cumberland County tracts also received an excessive amount of rainfall for the growing season, which caused a similar acceleration of ripening in that county as well. In order to avoid the burning of its Sampson County tobacco crops, which would render the tobacco worthless, the debtor reallocated harvesting resources from its Cumberland County tracts to those in Sampson County. As a result, a large portion of the debtor's Cumberland County tobacco crops burned in the fields before they could be harvested.

Debtor filed a proof of loss form under the Sampson County policy claiming a loss caused by adverse weather conditions, i.e., excessive rainfall. RCIS approved that claim and paid the debtor $100,000 for reimbursement of the loss. Debtor filed another claim under the Cumberland County policy stating that it had suffered an insurable loss in the amount of approximately $49,027.20 on

---

[2] By order dated July 7, 2011, the court denied RCIS' motion to dismiss based upon the arbitration clause, finding that the issues raised in the adversary proceeding were "core" and thus subject to bankruptcy court jurisdiction.

[3] The Policy states that "[i]nsurance for each agricultural commodity in each county will constitute a separate policy." Exhibit 1, Page 4.

two bases: 1) excessive rainfall in Cumberland County, and 2) excessive rainfall in Sampson County which, in turn, resulted in a loss to the Cumberland County tobacco crops. After a delay caused by RCIS's misplacement of the claim, RCIS denied the claim, determining that there was not excessive rainfall in Cumberland County and that the cause of loss to the Cumberland County tobacco was the failure of the debtor to timely harvest the crop, a cause not covered under the Policy.

Following the denial of the debtor's insurance claim, the debtor initiated the present adversary proceeding.

## DISCUSSION

A. <u>Whether a breach of contract occurred</u>

The primary issue before the court is whether RCIS breached the Policy by denying the debtor's claim for its tobacco crop loss in Cumberland County in 2008. RCIS's contractual obligations to the debtor are set forth in the Policy and its accompanying Guaranteed Tobacco Crop Provisions (the "Crop Provisions"), which provide as follows, in pertinent part:

> 1. **Definitions**
> \* \* \*
> **Insurable Loss** - Damage for which coverage is provided under the terms of your policy, and for which you accept an indemnity payment.
>
> \* \* \*
>
> 12. **Causes of Loss.**
> The insurance provided is against only unavoidable loss directly caused by specific causes of loss contained in the Crop Provisions. All specified causes of loss, except where the Crop Provisions specifically cover loss of revenue due to a reduced price in the marketplace, must be due to a naturally occurring event. All other causes of loss . . . are NOT covered.
>
> \* \* \*
>
> 10. **Causes of Loss.**
> In accordance with the provisions of section 12 of the Basic Provisions, insurance is provided only against the following causes of loss that occur during the insurance period:
> (a) Adverse weather conditions; . . .

Common Crop Insurance Policy, No. NC-090-530796, and Guaranteed Tobacco Crop Provisions, Pl's Exhibits 1 and 2.

When the terms of an insurance policy are unambiguous, they are to be "taken and understood in their ordinary sense and the policy must receive a practical, reasonable and fair interpretation consonant with the apparent object and intent of the parties." Abady v. Hanover Fire Ins. Co., 266 F.2d 362, 364 (4th Cir. 1959); see also Walsh v. United Ins. Co., 265 N.C. 634, 639 (1965) (holding that where the terms of an insurance policy are "plain, unambiguous, and susceptible of only one reasonable construction," a court should enforce the contract pursuant to its terms); Hagler v. Hagler, 319 N.C. 287, 294 (1987) (finding, in the context of general contract interpretation, that "[w]hen the language of a contract is clear and unambiguous, construction of the contract is a matter of law for the court.")

The court finds that the relevant portions of the Policy and its corresponding Crop Provisions are plain and unambiguous. The Policy clearly defines an insurable loss as "damage for which coverage is provided" under its terms. Policy, Basic Provisions, § 1. Coverage is provided only for "unavoidable loss directly caused by specific causes of loss contained in the Crop Provisions." Policy, Basic Provisions, § 12. It is undisputed that "adverse weather conditions" is a defined cause of loss under the Crop Provisions. Policy, Crop Provisions, § 10(a). Likewise, it is undisputed that a loss occurred with respect to the debtor's 2008 Cumberland County tobacco crop. The question for the court is whether adverse weather conditions *directly caused* the loss of the debtor's Cumberland County tobacco crop.

The debtor maintains that both Sampson County and Cumberland County received an excessive amount of rainfall during the time period in question, causing the crops in both counties to ripen too rapidly for a proper harvest. As such, the debtor's first argument is that RCIS is

obligated to provide compensation for the Cumberland County loss, just as it did for the Sampson County loss, based on the adverse weather condition of excessive rainfall. The debtor, as the insured, bears the burden of proving that the Policy covers the damage claimed. Hobson Constr. Co. v. Great American Ins. Co., 71 N.C. App. 586, 590 (N.C. Ct. App. 1984), disc. review denied, 313 N.C. 329, 327 S.E. 2d 890 (1985). If it is proven that the claim falls within the policy language, the burden shifts to the insurer to prove that damage is excluded from coverage by a policy exception. Id.

However, the facts in evidence do not establish excessive rainfall in Cumberland County. Michael Peterson, president of the debtor entity, testified that during a normal tobacco growing season, his fields would typically receive 20 to 24 inches of rainfall, thereby establishing a range of "non-excessive" rainfall. According to the debtor's Sampson County rain gauge (albeit located on a nearby hog farm), from which the debtor measured and recorded daily rainfall amounts, the Sampson County fields received over 30 inches of rain during the regular 2008 season, constituting excessive rainfall and providing a basis for recovery under the Sampson County policy. As to Cumberland County, however, Mr. Peterson testified that based on his recollection, the rainfall accumulation was probably between 24 and 26 inches. No data recorded by the debtor was introduced as to the amount of rainfall on the Cumberland County fields. The debtor did introduce data from a Cumberland County weather station 15 miles from the debtor's fields, and that data tends to corroborate Mr. Peterson's estimate.[4] This sparse evidence as to the amount of rain in Cumberland County is essentially consistent with Mr. Peterson's estimation of the normal amount

---

[4] Additionally, RCIS introduced rainfall data from the Harnett County airport indicating rainfall in the amount of 16 inches between June and September. The debtor testified that the Harnett County airport is approximately 30 miles from its Cumberland County fields.

of rainfall over the course of a growing season.[5] As a result, the court is not persuaded that the Cumberland County fields received excessive rainfall during the 2008 tobacco growing season. The court, therefore, cannot find that the loss of the Cumberland County tobacco crop was directly caused by excessive rainfall in Cumberland County.

Next, the debtor contends that because Sampson County experienced excessive rainfall, the Sampson County fields required the debtor's primary attention thus negatively affecting its ability to harvest the tobacco in Cumberland County in a timely fashion. As such, in order to find that RCIS breached its contract with the debtor by denying the Cumberland County claim, the court must conclude that excessive rainfall in Sampson County *directly* caused the damage to the Cumberland County crop. Again, the court is not persuaded. To make such a finding would require the court to take a large leap in causation. The necessary analysis is similar to that conducted by the Fourth Circuit in Abady v. Hanover Fire Ins. Co., 266 F.2d 362 (4th Cir. 1959), which involved a claim against an insurance company for damage purportedly caused by wind. In that case, certain areas of a building flooded when water inside the building's pipes froze, bursting the pipes, releasing large amounts of water into the building when the temperature warmed and the frozen water melted. The insured claimed that a windstorm, a covered cause of loss under his insurance contract, caused a roof hatch to open, and a subsequent cold spell led to the freezing of the water in the pipes and the eventual flooding of the building. The insurance contract required, however, that for a cause of loss to be insurable it must be the "direct" cause of the loss claimed. The Abady court found that if the wind had dislodged the hatch cover, "such action of the wind was too remote from the actual damage

---

[5] Mr. Peterson testified that although Cumberland County received episodes of large amounts of rain, which has a more deleterious effect on crops than if the same amount of rain fell over a longer period of time, that effect was neutralized by the sandy soil composition in Cumberland County which has better drainage and thus more tolerance for wetter conditions.

to fall within the coverage of the policy;" likewise, the court could not conclude that the cold air blowing on the pipes through the open hatch directly caused the damage. Id. at 364. The court thus determined that the policy was intended to provide coverage for damage directly attributable to wind, and that "'direct wind damage certainly could not be construed as a frozen pipe.'" Id. at 364-65, (quoting the lower court).

The Abady case is instructive in the present matter because it demonstrates the tenuous connection upon which the court would have to base its ruling that excessive rainfall in one county can cause a loss of crops in another county.[6] According to the debtor, the court should read the Policy broadly, without limiting the coverage language to losses occurring in a particular county. This viewpoint espoused by the debtor stands in conflict with the fact that the debtor had two separate insurance policies for the crops in two separate counties. In addition, the Policy itself contains a definition of the "insured crop" which reads as follows: "[t]he crop in the county for which coverage is available under your policy as shown on the application accepted by us." Policy, pg. 4. At the hearing, the court raised the analogy of a farmer with a crop in County A insured by

---

[6] See also Florists' Mutual Ins. Co. v. Tatterson, 802 F. Supp. 1426 (E.D. Va. 1992), concerning a greenhouse insurance policy and a snowstorm that caused damage to several of the policy holder's greenhouses, but not to the plants inside. Nevertheless, the snow caused certain areas of the greenhouse roofs to sag, creating a poor growing environment for some of the plants, and the policy holder moved many plants to non-damaged areas of the greenhouses. Once the plants were moved, overcrowding occurred, causing the plants in the crowded areas to suffer. The policy holder sought to recover for damage to the plants, claiming that once the plants were sold, the overcrowded plants sold for less than they normally would, based on their weakened condition. The policy covered direct loss caused by the weight of snow. The court held that the damage to the plants was not the direct result of snow, but rather was attributable to the decision to rearrange certain plants after the snow had melted. According to the Tatterson court, the damage caused by crowding was "at best" indirect damage caused by the weight of snow. In addition, the court noted that although some courts (citing to cases from Oregon, Texas, and Arizona) have declined to follow Abady's reasoning, applying a proximate cause standard instead, Abady is the law of the Fourth Circuit. Incidentally, the Tatterson court stated that "one cannot make 'indirect' damages 'direct' by calling them 'proximate,'" and completed a proximate cause analysis as well, concluding that the weight of snow was not the proximate cause of the damage to the policy holder's plants.

Insurer A, and a crop in County B insured by Insurer B.  Surely Insurer B would not pay a claim for a loss in County B, if based on a loss that occurred in County A, without some showing of a direct connection between the two.  The court can find no such connection in the present case.  To read the Policy such that it would provide coverage for a Cumberland County loss purportedly caused by adverse weather in another county would significantly stretch the terms of the Policy.  A court should avoid such a "strained or forced construction[]" of an insurance contract.  43 Am. Jur. 2d Insurance § 300.  Accordingly, this court will not strain its interpretation of the term "directly caused" in the policy at hand.  Under these facts and circumstances, the excessive rain in Sampson County is not an insurable cause of loss for the damaged tobacco in Cumberland County.  The adverse weather conditions that existed in Sampson County were too remote to be the direct cause of loss to the Cumberland County tobacco crops and were, at best, an *indirect* cause of the loss.  As a result, RCIS did not breach its contract with the debtor by denying the Cumberland County claim.

Because the court finds that the loss is not insurable, it is not necessary to evaluate whether the debtor's decision to reallocate harvesting equipment constituted mismanagement or negligence, the affirmative defense asserted by RCIS.

      B.      <u>Whether RCIS engaged in unfair or deceptive claims handling practices</u>

The second issue before the court is whether RCIS engaged in unfair claims handling practices under N.C. Gen. Stat. § 58-63-15 with regard to its handling of the debtor's claim under the Policy.  The debtor contends that RCIS failed to properly and thoroughly investigate the claim, lost the claim file, reconstructed it, and made a decision on the claim approximately 1.5 years after receipt, upon prompting by the debtor's attorney.  RCIS does not deny these contentions.

Under part eleven (11) of N.C.G.S. § 58-63-15, titled "Unfair Claim Settlement Practices," the alleged improper acts must be "committ[ed] or perform[ed] with such frequency as to indicate

a general business practice of any of the following . . .," and a list of practices follows, including misrepresentations, bad faith, etc. Id. at (11). While the court does not condone the delay that occurred in the handling of the debtor's claim, there is no evidence that the delay was willful or caused any loss to the debtor. Further, there is no evidence RCIS's actions occurred on such a scale as to constitute a "general business practice." For this reason, the claim of unfair or deceptive claims handling practices cannot succeed.[7]

      C.      Whether RCIS engaged in unfair or deceptive trade practices

As to the debtor's contention that RCIS engaged in unfair or deceptive trade practices, chapter 75 of the North Carolina General Statutes requires that the plaintiff show (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff. N.C. Gen. Stat. § 75-1.1. As the court has noted, although RCIS's delay in handling the claim is not laudable, the court does not find that RCIS committed any unfair acts that caused injury to the debtor, and therefore does not find that RCIS engaged in unfair and deceptive trade practices pursuant to N.C.G.S. § 75-1.1.

### CONCLUSION

Based upon the court's findings of fact and conclusions of law, the court finds that RCIS did not breach its contract with the debtor by denying the Cumberland County claim, and RCIS did not engage in unfair or deceptive claims handling or trade practices. A separate judgment will be entered to this effect.

**END OF DOCUMENT**

---

[7] The debtor's post-hearing brief additionally asserts that RCIS breached the insurance contract with the debtor by failing to pay the claim or respond within 30 days of receipt. However, the Policy provides that any damages attributable to a delay in claim handling are limited to interest on the damages award. Inasmuch as there will be no recovery by the debtor under the Policy, there can be no recovery under the contract for a delay in claims processing.